### IN re HOLLAND AMERICAN WAFER COMPANY.

**Appeal No. 84–660.**

United States Court of Appeals, Federal Circuit.

June 12, 1984.

---

John E. McGarry, Grand Rapids, Mich., for appellant.

Joseph F. Nakamura, Sol., and Jere W. Sears, Deputy Sol., Arlington, Va.; for appellee; Fred W. Sherling, Associate Sol.; Arlington, Va., of counsel.

Before FRIEDMAN, BENNETT and NIES, Circuit Judges.

NIES, Circuit Judge.

The decision of the Assistant Commissioner for Trademarks rejecting an application for renewal of Registration No. 152,-825 as untimely is affirmed.

### Background

Holland American Wafer Company seeks to renew Registration No. 152,825, issued March 7, 1922, (renewed 1942 and 1962) for the following mark for bakery products —namely, wafers:

On July 29, 1981, the president of Holland executed a document entitled "Application for Renewal and Amendment" containing an affidavit declaring the registered mark was still in use in interstate commerce on the goods as evidenced by its current label showing the following mark:

Holland requested that the registration be amended to conform the drawing of the mark to its current usage. This dual purpose application was filed in the U.S. Patent and Trademark Office (PTO) on August 10, 1981, approximately a month before the period provided for renewal in Section 9 of the Lanham Act (15 U.S.C. § 1059(a))[1]. The papers, though premature for renewal, were transmitted to the office which handles amendments, presumably because an amendment may be filed at any time.[2]

By decisions on June 4, 1982, and August 3, 1982, the PTO rejected the amendment for the reason that the new form of the mark created a different commercial impression from that of the original mark and was, therefore, deemed to be a material alteration of the character of the mark.

By a Petition to the Commissioner filed August 23, 1982, Holland sought review of this holding. The Assistant Commissioner for Trademarks, to whom the matter was delegated, held that the entire matter was mooted by the expiration of the registration in the interim due to the failure of Holland to file a timely renewal application. In connection with a request made November 24, 1982, for reconsideration, also denied, Holland submitted a substitute renewal application averring use during the renewal period of the new form of its mark and seeking to correct matters nunc pro tunc.

Our jurisdiction to review the Commissioner's decision with respect to a renewal application is specifically granted by 28

1. 15 U.S.C. § 1059(a) reads:

Each registration may be renewed for periods of twenty years from the end of the expiring period upon payment of the prescribed fee and the filing of a verified application therefor, setting forth those goods or services recited in the registration on or in connection with which the mark is still in use in commerce and having attached thereto a specimen or facsimile showing current use of the mark, or showing that any nonuse is due to special circumstances which excuse such nonuse and it is not due to any intention to abandon the mark. Such application may be made at any time within six months before the expiration of the period for which the registration was issued or renewed, or it may be made within three months after such expiration on payment of the additional fee herein prescribed.

2. The rules of practice do not provide for a combined amendment and renewal. Had appellant filed separate applications, the office procedure of immediately rejecting the renewal would likely have been followed. Registrants should note that separate applications under Section 7(d) and 9(a) facilitate processing in the PTO.

U.S.C. § 1295(a)(4)(B) and 15 U.S.C. § 1071(a)(1).[3]

### Discussion

 To secure renewal of a trademark registration under Section 9(a), application must be "made" to the Patent and Trademark Office (PTO) by the owner of the registration. The contents of a renewal application must include, *inter alia,* a statement of the goods and/or services for which the mark is being used, a statement that the mark is in use in interstate or other commerce under the control of Congress, a specimen label showing the mark as currently used, and an affidavit by the owner of the mark attesting to the above representations. A complete application must be submitted within a specific statutory time period. Timeliness set by statute is not a minor techinical defect which can be waived by the Commissioner. *In re Precious Diamonds, Inc.,* 635 F.2d 845, 208 USPQ 410 (CCPA 1980).

While Holland admits that it *filed* no application within the statutory period, Holland asserts that its application was, nevertheless, timely because the application was *made* within the period. In Holland's view, a premature application validates itself by its pendency before the PTO during the statutory period. Thus, to Holland, "made" means merely "pending".

 Contrary to Holland's position, the PTO interprets "made" in Section 9(a) to mean not only *filing* but also *execution*

of the application within the time period. As specifically set forth in the regulations under "Requirements of Application for Renewal":

> This statement [of continued use on particular goods, etc.] *must be executed not more* than six months before the expiration of the registration. (emphasis added) 37 C.F.R. § 2.183(a).

This long standing regulation reflecting the statutory interpretation by the office is entitled to great weight.[4] *In Re Marriott-Hot Shoppes, Inc.,* 411 F.2d 1025, 1028, 162 USPQ 106, 110 (CCPA 1969). *See also, Melamine Chemicals, Inc. v. United States,* 732 F.2d 924, 928 (Fed.Cir.1984). It is, in any event, in accord with our reading of the statute. Substantively, Section 9(a) is concerned with use during the renewal period. Thus, the oath and evidence of use (i.e., the *current* label) must pertain to the statutory renewal period. Appellant's "pendency" theory wholly fails to take into account the substance of the application and totally ignores the regulations. A premature application simply does not contain the necessary averments and evidence of use during the critical period.

 Holland next seeks to validate its defective renewal application on a theory of estoppel. Holland asserts that it was misled by the PTO's failure to notify Holland of the refusal to renew in sufficient time to permit timely refiling. No statute or regulation imposes such an obligation on the office.[5] On the contrary, it is the obli-

---

3. The statement in *In re Makari,* 708 F.2d 709, 218 USPQ 193 (Fed.Cir.1983) that we generally do not have jurisdiction to review decisions of the Commissioner on petitions is, of course, inapplicable to situations where jurisdiction is expressly conferred by statute.

4. A comparable requirement for execution and filing within the statutory time period .is imposed by the PTO in connection with an affidavit or declaration of use due after the fifth and before the sixth anniversary date of a registration in accordance with Section 8 (15 U.S.C. § 1058). See 37 C.F.R. § 2.162. *Accord, In Re Precious Diamonds, Inc.,* 635 F.2d 845, 208 USPQ 410 (CCPA 1980). Section 8, like Section 9, is concerned with extending the term of the registration upon a showing of use at the time the extension is sought. Section 9 is more strin-

gent than Section 8 in that it *requires* a current label to accompany the application and also more particularized averments with respect to use.

5. To support its position that implicitly the PTO has such duty, Holland points to the regulation which requires that *defects* in a renewal application must be corrected *within* the statutory period 37 C.F.R. § 2.184(a) and to the *Trademark Manual of Examining Procedure,* § 1605.01(a) (Rev. 5 1982) which states that a premature renewal application is *to be returned* to the registrant. We fail to see that either supports Holland's position. Further, the PTO was diverted from its normal practice of *promptly returning* premature renewal papers by Holland's having combined renewal with a request for amendment which was being processed.

1019

gation of the registrant to follow the regulations which in this instance are clear and unambiguous. Nevertheless, assuming the existence of such obligation on the PTO and its breach by the inordinate delay in raising the issue of timeliness, we conclude that no theory of estoppel is supportable in view of appellant's failure to show prejudice arising from the PTO's default. In particular, Holland does not claim to be using the mark in the form as registered. Moreover, Holland's current label accompanying the application shows a distinctly different mark which does not support renewal.

Holland's submission of a proposed amendment of its mark with its renewal application indicates it was proceeding under the misconception that, even though its current label would not support renewal, the problem could be solved by an amendment of the form in which the mark was registered to the new design. As stated in its petition to the Commissioner: "It appears that acceptance of the renewal application *will hinge* on the decision regarding amendment of the registration." This premise is basically flawed.

■ Amendment of a registration is allowed under the Lanham Act but not to extend the scope of protected rights or to change the nature of the mark.[6] No reexamination is made by the PTO to determine registrability over other marks. No opposition by third parties is sanctioned. Thus, to prevent prejudice to others, Section 7(d) provides, *inter alia,* that an amendment may not "alter materially the character of the mark."

■ Conversely, if the revised mark is not materially different from the mark as registered, there is no substantive rea-

son to deny renewal without an amendment. Accordingly, it is the practice of the office to allow renewal on the basis of a label which presents the mark in a somewhat different form from the form in which the mark is registered if the specimen does not show a material alteration of the mark as registered.[7] Thus, an amendment of the mark is not needed or required to obtain renewal in such cases and, more significantly, the filing of an amendment *does not enhance* a registrant's right to renew. Holland's proper course of action has been, and remains, the filing of an application to register its new mark.

We do not condone the manner in which the office handled this matter, particularly its failure to apprise the registrant at least by the first response of the defect in its renewal application. However, since Holland's current mark affords no basis for renewal, the failure of the office to promptly notify Holland that its renewal was untimely has not been shown to be a harmful error.

*Conclusion*

The decision of the Assistant Commissioner is *affirmed.*

AFFIRMED.

6. 15 U.S.C. § 1057(d) reads in pertinent part: Upon application of the registrant and payment of the prescribed fee, the Commissioner for good cause may permit any registration to be amended or to be disclaimed in part: *Provided,* That the amendment or disclaimer *does not alter materially* the character of the mark. (emphasis added)
See also 37 C.F.R. § 2.173(a) and (b) which spell out in more detail the various restrictions.

7. See, *Trademark Manual of Examining Procedure,* § 1605.07 (Rev. 5 1982). The practice is discussed further in J. Gilson, *Trademark Law and Practice,* § 4.09 (cumulative ed. 1982) with respect to renewals and at § 4.08 with respect to the comparable problem in a Section 8 affidavit or declaration.