**In re MOTHER TUCKER'S FOOD EXPERIENCE (CANADA) INC.**

No. 90–1260.

United States Court of Appeals, Federal Circuit.

Feb. 5, 1991.

Lawrence E. Abelman, Abelman, Frayne, Rezac & Schwab, New York City, submitted for appellant. With him on the brief was Julie B. Seyler, New York City.

Fred E. McKelvey, Sol., Office of the Solicitor, Arlington, Va., submitted for the Com'r of Patents and Trademarks. With him on the brief was Albin F. Drost, Beacon Falls, Conn., Associate Solicitor.

Before NEWMAN, ARCHER and PLAGER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

This case concerns affidavits filed under Section 8 of the Lanham Act, and the consequences of failure of the trademark owner to show that the registered mark is in use "in commerce". The principal issue is

whether use in commerce must be explicitly averred in an affidavit filed before the end of the statutory period for filing affidavits under Section 8. Subsidiary issues include whether the omission of such averral is curable after the end of the statutory period; whether use in commerce is presumed for restaurant service marks; and whether there are special considerations when the initial filing was made by a foreign applicant under Section 44(e) of the Lanham Act.

Mother Tucker's Food Experience (Canada) Inc. appeals the decision of the Commissioner of Patents and Trademarks, acting through the Assistant Commissioner for Trademarks, cancelling three service mark registrations for failure to comply with Section 8. We affirm.

*Background*

Appellant is the owner of three United States registrations for restaurant service marks; Registration Nos. 1,221,235, 1,221,236, and 1,221,237. The marks are the phrase "MOTHER TUCKER'S FOOD EXPERIENCE"; a stylized design featuring a smiling grandmotherly figure; and the phrase and design used together. Section 8 of the Lanham Act, 15 U.S.C. § 1058(a), at the time here applicable, read as follows:

§ 1058(a). Each certificate of registration shall remain in force for 20 years: *Provided,* That the registration of any mark under the provisions of this chapter shall be canceled by the Commissioner at the end of six years following its date, unless within one year next preceding the expiration of such six years the registrant shall file in the Patent and Trademark Office an affidavit showing that said mark is in use in commerce or showing that its nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark. Special notice of the requirement for such affidavit shall be attached to each certificate of registration.

This requirement was amplified in the Regulations, including 37 C.F.R. § 2.162(e)

which, at the time here applicable, read in part:

§ 2.162. The affidavit or declaration required by [C.F.R.] § 2.161 must: ....
(e) State that the registered mark is in use in commerce and specify the nature of such commerce....

Three declarations[1] on behalf of Mother Tucker were filed shortly before the end of the sixth year, stating that each of the three marks was "still in use as evidenced by the attached specimens showing the mark as currently used in association with restaurant services". Each declaration included the statement that "no other person ... has the right to use said mark in commerce". The examiner refused to accept the declarations, on the ground that they did not allege use by the registrant in commerce and did not specify the type of commerce in which the marks were in use. The sixth year set in Section 8 for the filing of such declarations had expired, and the examiner held that the three registrations would be cancelled.

Mother Tucker filed a petition to the Commissioner, 37 C.F.R. § 2.146(a)(2), requesting permission to submit corrected declarations and explaining that the omission of the words "in commerce" was inadvertent and was due to an error in the retyping by the registrant of the first page of the printed Section 8 forms that had been provided by registrant's United States counsel. The Commissioner denied the petition, holding that the declaration that the marks were "in use" did not comply with statute and regulation, and that the Section 8 submissions viewed as a whole were not a sufficient showing that the marks were used in commerce. The Commissioner held that the specimen marks submitted with the declarations did not cure the omission in the text of the declarations, for the specimens did not show use in commerce.

The Commissioner's position is that since the requirement of use in commerce is set by statute, and since such use was not shown during the sixth year as the statute requires, this essential element can not be

1. By regulation, 37 C.F.R. § 2.20, declarations may be filed in lieu of oaths. In this opinion "affidavit" and "declaration" are without difference.

waived, or the deficiency cured after the statutory period has ended.

This appeal is taken under 15 U.S.C. § 1071(a)(1), which authorizes, *inter alia*, direct appeal to this court of a Commissioner's decision concerning an affidavit of continuing use.

## Analysis

### A

■■■■ The purpose of Section 8 of the Lanham Act is to remove unused marks from the Register. At the times here pertinent[2] the requirements for compliance with Section 8 were somewhat less stringent than the requirements for renewal affidavits under Section 9. *In re Holland American Wafer Co.*, 737 F.2d 1015, 1018 n. 4, 222 USPQ 273, 275 n. 4 (Fed.Cir.1984). The PTO followed the practice that a Section 8 affidavit was sufficient for examination if it simply included the statement that the mark was still in use in commerce (or contained an excuse for non-use). *Trademark Manual of Examining Procedure* §§ 1603.07, 1603.08. Thus Mother Tucker argues that since the marks were indeed in use in commerce, and it timely filed the declaration that the marks were "in use", omission of the words "in commerce" was at most a minor technical defect.

"A minor technical defect in an affidavit", in the words of one of our predecessor courts, is a poor reason to remove an otherwise good trademark from the federal register, thus obliging the trademark owner to repeat the entire registration process. In *Morehouse Manufacturing Corp. v. J. Strickland & Co.*, 407 F.2d 881, 887–88, 160 USPQ 715, 720 (CCPA 1969), the registrant had filed a timely Section 8 affidavit but had inadvertently included a specimen mark that differed in minor ways from the current form of the registered trade-

mark—a flaw not discovered until some years later. The CCPA observed that the only purpose of the requirement that a specimen be filed with the Section 8 affidavit was to corroborate the averment of continuing use in commerce, and that the submission of an incorrect specimen was a minor technical defect, and not sufficient grounds for cancellation of the registration. *Id.* at 887–88, 160 USPQ at 720. Mother Tucker urges, citing *Morehouse*, that the policy implemented by Section 8 is to remove "deadwood", and that when the affidavit is timely filed and the mark is actually still in use in commerce, a technical defect in the affidavit is remediable, even after the sixth year. Mother Tucker states that denial of the opportunity to correct the inadvertent omission of the words "in commerce" violates the legislative purpose of Section 8.

The Commissioner's position is that the omission of averral of use in commerce was not a minor technical defect, for unlike the requirement for the provision of current specimen marks (the defect in *Morehouse*), the showing of use in commerce was a statutory requirement. We thus consider whether the Commissioner has discretion to accept a showing of use in commerce made after the end of the sixth year.

We strive to avoid imposing any greater bureaucratic rigor on the public than the trademark statute and orderly administration demand. However, there is a compelling difference between noncompliance with a statutory requirement and a mere technical defect. While the latter may often be remedied with discretionary benevolence, the former is another matter. Administrative discretion may enable correction of a technical defect *nunc pro tunc*, but failure to comply with a statutory provision offers far less flexibility to the administrator and the courts.[3]

---

**2.** See n. 4, *post*, and the 1988 amendments of Section 8 in coordination with the authorization of "intent to use" registration, explained in, *e.g.*, The United States Trademark Association Trademark Review Commission Report and Recommendations to USTA President and Board of Directors, 77 TMR 375, 407–09 (1987), *reprinted in* The Legislative History, Reports, Testimony, and Annotated Statutory Text [of] The Trade-

mark Law Revision Act of 1988 at 15, 47–49 (USTA 1989).

**3.** The distinction has long been recognized between "mandatory" and "directory" provisions of a statute. As explained by T. Sedgewick, *Interpretation and Construction of Statutory and Constitutional Law* (2d ed. 1874), pp. 316–18, the term "directory" describes provisions that par-

Analogy is seen in the case of *In re Precious Diamonds*, 635 F.2d 845, 208 USPQ 410 (CCPA 1980), where the Section 8 affidavit was filed by an individual instead of the registrant corporation. Since the statute required that the affidavit be filed by the registrant, and since the sixth year had passed, the court upheld the Commissioner's ruling that no valid affidavit had been filed and that the PTO had properly cancelled the registration. *Id.* at 847, 208 USPQ at 411. In *In re Culligan International Co.*, 915 F.2d 680, 16 USPQ2d 1234 (Fed.Cir.1990) this court affirmed that an applicant's failure to pay the late renewal fee under Section 9 during the three month period allowed in the statute for late renewal applications "on payment of the additional fee", 15 U.S.C. § 1059(a), could not be waived by the Commissioner since it was an express requirement of the statute. In *Culligan*, as in *Precious Diamonds*, failure to comply with the statutory requirements was not curable *nunc pro tunc*.

The history of Section 8 supports the view that compliance with the statutory requirements is mandatory. The words "in commerce" were added to Section 8 in 1982, when the phrase "still in use" was changed to "in use in commerce". P.L. 97–247 § 8(a)(1982). While the purpose of the statutory change was to assure that foreign or intrastate commerce not be included as "in use" under Section 8, *see* H.R.Rep. No. 542, 97th Cong., 2d Sess. at 10, *reprinted in* 1982 U.S.Code Cong. & Admin. News 765, 774 (referring to reports

that some courts had interpreted "still in use" as not limited to interstate commerce or commerce between the United States and foreign nations), this legislative action underlines the central importance of use in commerce that is subject to the Lanham Act.[4]

Although the text of Section 8 required a "showing" of use in commerce, and did not state that Section 8 affidavits must aver "use in commerce" *in haec verba*, in Mother Tucker's case there was neither averral nor alternative showing. (See Part B, *post.*) This was not a minor technical defect. It was not within the Commissioner's discretionary authority to waive this requirement, and thus the Commissioner did not abuse his discretion in holding that this omission could not be cured after the end of the statutory sixth year.

## B

The specimens submitted with the declarations were a dinner menu, a display card used to advertise beverages, and an advertisement concerning group events, each bearing one or more of the three service marks. The Commissioner states that had the only objection been to the specimens themselves, the PTO would have allowed the applicant to correct any deficiency after the sixth year had ended. Indeed, this procedure was authorized in 37 C.F.R. § 2.162(e):[5]

(e) ... The statement must be supported by evidence which shows that the mark

take more of formality than of substantive requirement of law; in such case, failure of strict compliance need not invalidate the underlying proceeding. However, in view of the fundamental substantive law that registered marks must be used in commerce, the statutory requirement that this use be shown during the time period that is set in the statute is mandatory. It is not simply a formality.

4. Section 8 was again amended after the events here at issue. In P.L. 100–667 § 110 (1988) Congress replaced the words "showing that said mark is in use in commerce" with "setting forth those goods or services recited in the registration on or in connection with which the mark is in use in commerce and attaching to the affidavit a specimen or facsimile showing current use

of the mark...." The stated purpose was to impose stricter requirements for maintaining a registration after six years. *See* S.Rep. No. 515, 100th Cong., 2d Sess. 6–7, *reprinted in* 1988 U.S.Code Cong. & Admin.News 5577, 5582–83 (discussing the 1988 amendment, which provided, *inter alia*, for "intent to use" registration). However, we apply the statute as it existed at the time Mother Tucker's declarations of use were filed; if anything, a text more favorable to Mother Tucker. *See, e.g., Sargisson v. United States*, 913 F.2d 918, 922–23 (Fed.Cir.1990) (the general rule that retroactivity of statutory change is not presumed).

5. This regulation has since been amended to comport with the 1988 amendments to Section 8.

is in use, and normally such evidence consists of a specimen or a facsimile specimen which is currently in use, or a statement of facts concerning use. The supporting evidence should be submitted with the affidavit or declaration, but if it is not or if the evidence submitted is found to be deficient, the evidence, or further evidence, may be submitted and considered even though filed after the sixth year has expired.

The examiner did not criticize the specimens. The Commissioner states that the declarations would have been accepted if the specimens had shown use in commerce. We discern no error in the Commissioner's failure to offer the applicant the opportunity to fill this gap after the sixth year had expired.

■ Mother Tucker also contends that its averral of "use ... in connection with restaurant services" was a sufficient statutory showing, arguing that restaurant services are necessarily rendered "in commerce", citing *In re Gastown, Inc.*, 326 F.2d 780, 140 USPQ 216 (CCPA 1964); *In re Smith Oil Corp*, 156 USPQ 62 (TTAB 1967); and *In re Ponderosa Motor Inns*, 156 USPQ 474 (TTAB 1968). Each of these cases relates to intrastate establishments that provided services to interstate travellers. Mother Tucker did not make a similar showing. *See In re Bookbinder's Restaurant, Inc.*, 240 F.2d 365, 44 CCPA 731, 112 USPQ 326 (CCPA 1957) (a sufficient showing of use in commerce is required for registration of the service mark of an intrastate restaurant; attorney argument is insufficient). Mother Tucker's statement of use of its marks "in connection with restaurant services" is explanatory of the type of use of the marks, but is not a showing of use in commerce as required by Section 8.

In its petition to the Commissioner Mother Tucker stated that it operates several restaurants in the United States and Canada. On this basis, its marks would meet the definition of 15 U.S.C. § 1127:

¶ 15. For the purposes of this chapter a mark shall be deemed to be used in commerce ... (b) on services when it is used or displayed in the sale or advertising of

services and the services are rendered in commerce, or the services are rendered in more than one State or in this and a foreign country and the person rendering the services is engaged in commerce in connection therewith.

The Commissioner states, and we agree, that this information was not timely made of record in the Section 8 filings.

The Commissioner did not hold, and does not now argue, that Mother Tucker can not show use in commerce that is subject to the Lanham Act, but only that it did not do so in the statutory period. We affirm the Commissioner's holding that, on the documents and specimens filed before expiration of the sixth year, it was not shown that the marks were in use in commerce.

### C

■ Mother Tucker argues that the Commissioner placed undue emphasis on the fact that it is a Canadian corporation, and drew unwarranted adverse inferences because the marks were registered under the provisions of Section 44(e) of the Lanham Act, 15 U.S.C. § 1126(e), which provided:

(e) A mark duly registered in the country of origin of the foreign applicant may be registered on the principal register if eligible, otherwise on the supplemental register in this chapter provided. The application therefor shall be accompanied by a certification or a certified copy of the registration in the country of origin of the applicant.

Section 44(e) authorizes United States registration of foreign marks solely by virtue of a foreign registration, and does not require use in commerce for the initial registration. *Imperial Tobacco v. Philip Morris, Inc.*, 899 F.2d 1575, 1578, 14 USPQ2d 1390, 1392 (Fed.Cir.1990); *accord SCM Corp. v. Langis Foods Ltd.*, 539 F.2d 196, 199–200, 190 USPQ 288, 292 (D.C.Cir.1976). Mother Tucker suggests that the Commissioner required it to exercise a greater degree of care than domestic registrants in showing use in commerce under Section 8. Mother Tucker argues that this is contrary to Section 44(f) of the Lanham Act, 15

U.S.C. § 1126(f), and to Article 2 of the Paris Convention of 1883, both of which require equal treatment of foreign and domestic registrants. Section 44(f) provides:

> (f) The registration of a mark under the provisions of subsections (c), (d), and (e) of this section by a person described in subsection (b) of this section shall be independent of the registration in the country of origin and the duration, validity, or transfer in the United States of such registration shall be governed by the provisions of this chapter.

For example, Mother Tucker argues on this appeal that it made an adequate showing based on the specimen marks because the menu prices on the specimens were in United States dollars. The Commissioner responds that it is not apparent how to distinguish the prices from Canadian dollars. We agree, and on the record that was before the PTO we discern no evidence that the Commissioner held Mother Tucker to a more rigorous standard than is imposed on domestic registrants, or required a stronger showing under Section 8, or otherwise contravened the principle of national treatment.

The cancellation of the registrations is AFFIRMED.