THIS OPINION IS A
PRECEDENT OF THE TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

Butler

Mailed: August 22, 2007

Cancellation No. 92044132

Paris Glove of Canada, Ltd.

v.

SBC/Sporto Corp.

**Before Seeherman, Kuhlke and Taylor, Administrative Trademark Judges.**

**By the Board:**

Petitioner seeks to cancel respondent's Registration No. 1756155 for the mark AQUA STOP in rectangular form, discussed in more detail *infra*, alleging that 1) respondent has abandoned the mark shown in the registration by failing to use it, in its registered form, for at least three years, with no intention of resuming such use; 2) respondent has abandoned the subject mark by engaging in naked licensing thereof; and 3) respondent has maintained the registration fraudulently. As to its fraud claim, petitioner alleges that the combined declaration of use (Trademark Act §8 – 10 year)/application for renewal (Trademark Act §9) filed by respondent in 2002 stated under oath that the mark as shown in the registration remained in use when the mark was no longer used in its registered form. Petitioner alleges further that respondent knew this statement was false and misleading when made and that such statement would (if accurate)

induce the Office to accept the combined declaration, which the Office did.

In its answer, respondent denies the salient allegations of the petition to cancel.

This case now comes up on respondent's fully briefed motion for summary judgment in its favor on all counts of the petition to cancel and respondent's fully briefed motion to strike certain exhibits submitted by petitioner.

**Respondent's motion to strike Exhibit 2 from petitioner's response to respondent's motion for summary judgment**

Respondent seeks to strike as unauthenticated petitioner's Exhibit 2, which is composed of 1) the first page of a Google "hit list" search summary (1-10) for the term AQUA STOP; 2) an article from "Forestry and British Timber," which includes a reference to AQUASTOP waterproof linings for boots; and 3) printouts from two on-line catalogs apparently offering third-party AQUA STOP branded items.  Relying on the policy set out at TBMP §528.05(e) (2d ed. rev. 2004), respondent argues that the exhibits are not properly of record because they were not introduced by way of affidavit or declaration.

In response, petitioner argues that the materials were tendered to show that factual disputes remain for resolution at trial as to whether the change(s) respondent has made to the form of the mark covered by the subject registration constitutes a material alteration such that third parties would not have fair

2

notice as to the mark used under and protected by the registration.

Materials which qualify as printed publications under Trademark Rule 2.122(e), 37 C.F.R. §2.122(e), including electronic versions thereof, are considered self-authenticating. *See* TBMP §704.08 (2d ed. rev. 2004). *See also Weyerhaeuser Co. v. Katz,* 24 USPQ2d 1230 (TTAB 1992). On a motion for summary judgment, or a response to a motion, such materials may be submitted simply as an attachment or exhibit to the proffering party's brief, without the need for any separate authentication. *See* TBMP §528.05(e) (2d ed. rev. 2004).

Petitioner's submission from "Forestry and British Timber" qualifies as a printed publication under Trademark Rule 2.122(e). On its face, it identifies the publication and the date published. Accordingly, respondent's motion to strike is denied as to the article from "Forestry and British Timber."

Internet printouts which are not the electronic equivalents of printed publications do not fall within the parameters of Trademark Rule 2.122(e). *Raccioppi v. Apogee, Inc.,* 47 USPQ2d 1368 (TTAB 1998). However, like other materials which are not self-authenticating, Internet materials may be admissible as evidence in connection with a summary judgment motion, if competent and relevant, provided they are properly authenticated by an affidavit or declaration pursuant to Fed. R. Civ. P. 56(e). *See* TBMP §528.05(e) (2d ed. rev. 2004).

Relying on *In re Fitch IBCA, Inc.,* 64 USPQ2d 1058 (TTAB 2002), petitioner argues that it is well established that "Google hit-lists" are directly admissible into evidence, although the probative value of such lists will vary depending on the circumstances. Petitioner's reliance on an *ex parte* case is misplaced. The Board takes a more permissive stance with respect to the admissibility and probative value of evidence in an *ex parte* proceeding than it does in *inter partes* proceedings. *See* TBMP §1208 (2d ed. rev. 2004). Thus, the Board tolerates some relaxation of the technical requirements for evidence in an *ex parte* case. *Id.* However, as shown by *Fitch, supra*, even with the relaxed evidentiary standards in an *ex parte* proceeding, search result summaries from search engines such as Google are of limited probative value. *See also* TBMP §1208.03 (2d ed. rev. 2004).

Petitioner, arguing that *Raccioppi v. Apogee, Inc., supra*, does not state that a declaration or affidavit is required to authenticate all types of Internet material, asks the Board to reexamine and clarify the holding therein in view of technological advances since the decision issued. Petitioner contends that the authentication concerns expressed in *Raccioppi* no longer exist in view of the Internet Archive. According to petitioner, this database permanently archives over 55 billion Internet websites published since 1996 and the Archive's "Wayback Machine" feature provides searchable, free access showing each date on which a website has undergone a significant change.

4

Alternatively, it is petitioner's position that the standard articulated in *Raccioppi* applies solely to the movant on summary judgment because the non-movant need only assert that material factual issues remain for trial.

We disagree with petitioner's position that *Raccioppi* does not require that a declaration or affidavit be submitted in order to authenticate Internet material. In *Raccioppi, id.* at 1370, the Board clearly stated that "[t]he element of self-authentication which is essential to qualification under Rule 2.122(e) cannot be presumed to be capable of being satisfied by Internet printouts." Thus, the Board considered, "… as a question of first impression, whether print-outs of articles downloaded from the Internet, which have been introduced by means of a declaration of the person who accessed this information on the Internet, constitute admissible evidence for purposes of summary judgment." The Board made it clear in *Raccioppi* that it was only because this material was submitted by declaration that the Internet printouts were found admissible.

As to applicant's argument that the Internet Archive makes the holding in Raccioppi obsolete, the database itself is not self-authenticating and there is no reason to treat its existence as authenticating the pages in its historical record. We note that even petitioner characterizes the "Wayback Machine" as showing "each date on which a website has undergone a significant change." (Emphasis added.) What may be insignificant to the archivers for the "Wayback Machine" may have significance from

5

the standpoint of evidentiary value in a trademark proceeding. Thus, changes to a website, or in this case the excerpts taken from a website that appear in a Google search summary, may not appear in the Internet Archive. Moreover, in recent cases that have discussed or dealt with evidence from the Internet Archive, supporting declarations accompanied the evidence. *See, for example, St. Luke's Cataract and Laser Institute, P.A. v. Sanderson,* 70 Fed. R. Evid. Serv. 174 No. 8:06-CV-223, 2006 WL 1320242 (M.D.Fla. May 12, 2006) ("Plaintiff requests that printouts of pages from the laserspecialist.com and the lasereyelid.com websites taken from www.archive.org (hereinafter referred to as the "Internet Archive") and supporting declarations be admitted to show how the sites have appeared at various times since 2000."). *See also Novak v. Tucows, Inc.,* No. 06-CV-1909, 2007 WL 922306 (E.D.N.Y. March 26, 2007), in which even a declaration was found to be insufficient to authenticate Internet printouts, including exhibits from the Internet Archive and its "Wayback Machine" feature, because the declarant lacked the requisite personal knowledge to establish that the documents were what he proclaimed them to be.

Petitioner also asserts that the standard for authentication of Internet evidence set forth in *Raccioppi* applies solely to the moving party. However, we see no logical support for this position. Rule 56(e) of the Federal Rules of Civil Procedure provides that if the party moving for summary judgment has supported its motion with affidavits or other submissions which

if unopposed would establish its right to judgment, the nonmoving party may not rest on mere denials or conclusory assertions, but rather must proffer countering evidence, by affidavit or as otherwise provided in Fed. R. Civ. P. 56, showing that there is a genuine factual dispute for trial. *See* Fed. R. Civ. P. 56(e); Wright, Miller & Kane, 10B Fed. Prac. & Pro. Civ.3d §2739 (2007); and TBMP §528.01 (2d ed. rev. 2004). Rule 56 refers specifically to the pleadings, depositions, answers to interrogatories, admissions and affidavits. Because Board trial practice differs somewhat from a proceeding in a Federal Court, evidence that could be filed under a notice of reliance, *see* Trademark Rule 2.122, may also be submitted in support of or in opposition to a motion for summary judgment. Rule 56 clearly requires that the countering evidence submitted by the nonmoving party be by affidavit or as otherwise provided by the rule.

Petitioner's Google "hit list" search summary and excerpts from on-line catalogs are neither self-authenticating nor otherwise authenticated. Accordingly, respondent's motion to strike is granted in part as to these materials.

**History of Registration No. 1756155**

The Board first must look at the history of the registration before turning to respondent's motion for summary judgment.[1]

---

[1] The evidentiary record in a cancellation proceeding includes, without action by any party, the file of the registration which is the subject of the proceeding. *See* Trademark Rule 2.122(b).

Registration No. 1756155 issued on March 2, 1993 for the following mark:



(hereinafter "AQUA STOP rectangular form" or "rectangular form") for "footwear, namely, rubbers and boots." The following depicts the specimen submitted in support of registration:



On May 16, 2002, respondent filed its combined declaration of continued use (Trademark Act § 8 - 10 year) and renewal for its registration (Trademark Act §9). The following depicts the specimen submitted:



8

(Hereinafter "2002 specimen" or "duckman" specimen.)  On July 30, 2002, the Post Registration Division accepted the Section 8 declaration and granted the Section 9 renewal.

On January 3, 2005, respondent filed an amendment to its mark pursuant to Trademark Act §7(e) with the Post Registration Division seeking "to change the lay-out of the letters" as follows:



(hereinafter "AQUASTOP semicircular form" or "semicircular form").[2] On January 27, 2005, this proceeding commenced with the filing of the petition to cancel.

Respondent's post registration amendment, pending with the Post Registration Division, has yet to be considered.

**Respondent's motion for summary judgment**

For purposes of its motion, respondent admits "… that the mark depicted in the use specimen filed in the Combined Declaration of Use/Application for Renewal [*i.e.*, the 2002 specimen] and as currently being used by Registrant is not identical in stylization to the mark as originally registered."  Respondent asserts, however, that it has not abandoned the mark or committed fraud on the USPTO.

---

[2] In responding to respondent's motion for summary judgment, petitioner argues that respondent could have moved the Board to amend the mark in its registration prior to the filing of the motion for summary judgment.  However, as petitioner itself has noted, respondent had filed a request to amend the registration prior to the commencement of this proceeding.

We address first some procedural matters. Contrary to petitioner's contention, respondent's motion for summary judgment is not premature because it was filed before any discovery commenced. Had petitioner believed it needed discovery in order to respond to respondent's motion, it was incumbent upon petitioner to file a motion for discovery pursuant to Fed. R. Civ. P. 56(f). Further, respondent's motion is not procedurally defective, as petitioner claims, for failure to specify the material facts that are allegedly undisputed. While a listing of allegedly undisputed facts as a preamble to a motion for summary judgment is often proffered and is preferred by the Board, there is no requirement as to the form for setting forth undisputed facts.

In a motion for summary judgment, the moving party has the burden of establishing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. A genuine dispute with respect to a material fact exists if sufficient evidence is presented that a reasonable fact finder could decide the question in favor of the non-moving party. *See Opryland USA Inc. v. Great American Music Show, Inc.,* 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992). Thus, all doubts as to whether any particular factual issues are genuinely in dispute must be resolved in the light most favorable to the non-moving party. *See Olde Tyme Foods Inc. v. Roundy's Inc.,* 961 F.2d 200, 22 USPQ 1542 (Fed. Cir. 1992).

We consider in turn respondent's motion with respect to each of the three grounds alleged in the petition to cancel.

   1) Respondent's motion as to petitioner's claim that respondent
      has abandoned the mark shown in the registration by failing
      to use it, in its registered form, for at least three years,
      with no intention of resuming such use.

Underlying this abandonment allegation is a supposition by petitioner that respondent now uses its mark in the forms shown in the 2002 specimen (*i.e.*, the semicircular form, the linear form, and the duckman display),[3] and that the original rectangular form is no longer in use.  For purposes of its motion, respondent has conceded that the semicircular mark depicted in the 2002 specimen and as currently being used by respondent is not identical in stylization to the rectangular mark that was originally registered.  Thus, there is no genuine issue that respondent does not use the mark in the original rectangular form, but uses it in the semicircular form.  There is also no genuine issue, as discussed below, that respondent also uses the mark in linear form and as shown in the duckman specimen display.[4]

---

[3] The linear form refers to the mark as it appears on the reverse side of respondent's hang tag, *see infra*.  We note that petitioner characterizes the entire 2002 specimen as an additional version of respondent's mark.  Although we have accepted this characterization for purposes of our discussion herein, we do not suggest by this that we consider AQUASTOP and the duckman design as shown in the specimen to form a single mark.

[4] As part of its response to the motion for summary judgment petitioner states at p. 13 that a genuine dispute exists regarding whether respondent has abandoned the "original" mark, *i.e.*, the mark shown in the registration, essentially considering as irrelevant the fact that respondent uses other forms of the mark.  In view of respondent's concession, made for the purpose of this motion, that it is not using the rectangular form of the mark shown in the registration, there is no genuine issue of fact that this form of the mark is not in use.  Further, applicant's claim of abandonment requires a determination of whether the other forms of the mark constitute continuing use of the registered mark, *i.e.*, whether these forms are or are not a material alteration of the rectangular form of the mark.  If the varying forms of the mark are substantially the same and there is no genuine issue of material fact that there is no material alteration, then the abandonment claim on this basis fails.

In support of its motion, respondent argues that no new mark is created by its change from AQUA STOP rectangular form to AQUASTOP semicircular form. Respondent contends its modernized form of the mark is not a material alteration of the registered mark because the word portion is the dominant portion of both forms, thus providing a continuing commercial impression. According to respondent, the change in form does not constitute abandonment of the mark or a break in the continuous usage of the mark. Respondent notes that it also uses AQUA STOP in linear form on the back of its 2002 hang tag specimen, which was introduced by the declarations of respondent's president and respondent's attorney. A copy of the back of the hangtag specimen is reproduced below:

Aqua Stop®= Water Proof
Thermal Insulation includes  O
Dupont Thermolite®insole

In response, petitioner argues that respondent has abandoned its registered rectangular form mark in favor of one or more additional marks (semicircular form, linear form, or the complete duckman specimen display). Petitioner contends that respondent's registered mark in rectangular form is an integrated, stylized mark composed of elements which are linked to a common effect, making the stylization inseparable from the literal element. According to petitioner, issues for trial exist as to "… whether the Original Mark remains in use, and if not, when Registrant-Respondent's use of the Original Mark discontinued; what other forms of the mark have

12

been used since that date, and whether such forms constitute material alterations of the Original Mark."  Petitioner's Response to Respondent's Motion for Summary Judgment p. 5.

Petitioner's position that respondent still may be using its mark in the registered rectangular form (the "Original Mark") does not raise a genuine issue for trial because, if true, petitioner cannot prevail on its claim of abandonment based on a change in the form of use by respondent.  In any event, as noted *supra*, for purposes of this summary judgment motion respondent admits that it is not currently using the mark in the identical stylization in which the mark is registered.  Thus, there exists no genuine issue of material fact that, according to respondent's conditional admission, respondent is not using the mark in its original registered rectangular form.  Nor, in view of the declaration of respondent's president that it is using the mark in the forms shown on the hang tag, and petitioner's concession of such use, is there any genuine issue that respondent is using the mark in the semicircular and linear forms that appear on the 2002 specimen.  We thus turn to the question of whether these forms of the mark constitute use of the registered mark.  That is, we must determine whether a genuine issue of material fact exists that the forms of the mark now in use constitute a material alteration from the form of the mark as registered.

"Material alteration" is the standard for evaluating whether a change in the form of a registered mark is permissible.  *See* Trademark Rules 2.72 and 2.73, 37 C.F.R. §§2.72 and 2.73.  A

material alteration exists if the old and new formats do not create the same general commercial impression. *See* J. Thomas McCarthy, 3 McCarthy on Trademarks and Unfair Competition §§19:58:50 and 19:133 (4th ed. 2007). In contrast, a change in the form of a mark does not constitute abandonment or a break in continuous use if the change neither creates a new mark nor changes the commercial impression of the old mark. *Id.* at §17:26. Marks entirely comprised of words can sometimes be varied as to their style of lettering, size and other elements of form without resulting in a material alteration of the mark. *See Ex parte Squire Dingee Co.*, 81 USPQ 258, *recon. denied,* 81 USPQ 543 (Comm'r Pats. 1949) (amendment from rectangular lettering to script not a material alteration); and TMEP §1609.02(a) (4th ed. April 2005). With respect to Section 8 filings, mere changes in background or styling, or modernization, are not ordinarily considered to be material changes in the mark. *See* TMEP §1604.13 (4th ed. rev. April 2005).

We find that, although the displays are not identical, they are substantially the same. Thus, there is no material alteration between the original, registered AQUA STOP rectangular form of the mark which shows the words depicted on two lines, and the semicircular and linear forms which depict the words on one line and, in the case of the semicircular form, as one word. This is because the commercial impression of the mark is dependent upon the literal terms AQUA STOP and not on the rectangular, semicircular or linear forms of display. The particular stylizations of the semicircular and linear forms simply do not change the essential

nature of the rectangular form mark.  Nor, contrary to petitioner's characterization, does the duckman display on the 2002 specimen constitute a different form of the AQUA STOP mark.  The additional elements on the hang tag are not integral to the term AQUA STOP such that a new composite AQUA STOP mark results.  The term WATERPROOF identifies a quality of the goods.  The other elements, the duckman design and the term SPORTO, are separate from the AQUA STOP mark.  A similar, multi-element arrangement exists in the original specimen where other elements include a design suggesting rain, the term SPORTO, and the phrase KEEP THE MOISTURE OUT AND THE COMFORT IN.[5]

The cases relied upon by petitioner are distinguishable insofar as integral design elements were found to be part of the original marks.  In *In re CTB Inc.,* 52 USPQ2d 1471 (TTAB 1999), applicant sought to change its special form mark from



to standard character form, TURBO, thus deleting the swirling design element, which was determined to be "an essential part of the original mark and hence 'integrated' into the composite."  In *In re Dillard Department Stores,* 33 USPQ2d 1052 (Comm'r 1993), the registrant sought to change its mark from

---

[5] Petitioner references a "black bullet" under the second "a" in AQUASTOP with respect to the 2002 specimen.  However, the element referenced is actually the hole which allows the tag to hang on the item to which it is attached.



to



The Commissioner determined that the registered mark clearly contained "salient design features apart from the word portion" and that, particularly in view of the goods involved (clothing items), "the syllabication and unique layout could lead someone to view the mark as a play on the terms 'in' and 'vestments'." Thus, the proposed amendment was found to be a material alteration of the mark as registered.

Unlike the cases referenced by petitioner, there is no design feature in the registered rectangular form of the mark that is integral to the word portion of the mark. Further, both the semicircular and linear forms of the mark convey the same commercial impression. Moreover, the semicircular form of the mark maintains the commercial impression of the registered mark in the context of the overall duckman display (i.e., it is a separate element from the other wording and designs on the specimen). Thus, respondent's change in the style of its lettering does not constitute a material alteration of the mark as registered.[6]

---

[6] We note petitioner's assertion that respondent has misused the registration symbol by using it in connection with the linear form of the mark on the reverse side of the hang tag, and that petitioner intends to amend its

Because there is no genuine issue of material fact that respondent's uses of the term AQUA STOP in the semicircular and linear forms do not constitute material alterations of the registered rectangular form, as a matter of law petitioner's claim of abandonment must fail. Accordingly, respondent's motion for summary judgment on this ground is granted.

2) Respondent's motion as to petitioner's allegation that respondent has maintained the registration fraudulently

Respondent argues that it did not commit fraud in maintaining its registration because nothing was concealed from the USPTO. That is, respondent submitted the front side of the duckman specimen displaying the semicircular form of the mark with its 2002 combined Sections 8 and 9 declaration and the Post Registration Examiner accepted the declarations based on the specimen submitted.[7]

In response, petitioner contends that the 2002 combined declaration "embodied a material alteration" to the involved registration and that such declaration "was tendered with the full knowledge of the deficiency, in anticipation that the Office would rely on the Declaration, and that the registration would be renewed." Petitioner's Response to Respondent's Motion for Summary Judgment p. 22. Petitioner argues that a factual issue on its fraud claim remains in dispute as to respondent's intent and whether "respondent's commercial activities constituted ongoing use of the

petition to add this as a ground for cancellation after proceedings resume herein. However, because we find that the linear form is not a material alteration of the registered mark, no purpose would be served by allowing such an amendment.

17

Original Mark in commerce so as to provide a proper basis" in support of the declaration.  Petitioner's Response to Respondent's Motion for Summary Judgment p. 23.

Fraud in obtaining a renewal of a registration amounts to fraud in obtaining a registration.  *See Torres v. Cantine Torresella S.r.L.,* 808 F.2d. 46, 1 USPQ2d 1483 (Fed. Cir. 1986).  Fraud in obtaining a trademark registration occurs "when an applicant knowingly makes false, material representations of fact in connection with his application."  *Id.*  "If a registrant files a verified renewal application stating that its registered mark is currently in use in interstate commerce and that the label attached to the application shows the mark as currently used when, in fact, he knows or should know that he is not using the mark as registered and ***that the label attached to the registration is not currently in use***, he has knowingly attempted to mislead the PTO."  *Id.*  (Emphasis added.)  The Court in *Torres*, citing *In re Holland,* 737 F.2d 1015, 1019, 222 USPQ 273 (Fed. Cir. 1984), recognized that "[i]t is the practice of the office to allow renewal on the basis of a label which presents the mark in a somewhat different form from the form in which the mark is registered if the specimen does not show a material alteration of the mark as registered."

Here, no genuine issue of material fact exists that when respondent filed its combined §§8 and 9 declaration it submitted the duckman specimen with the semicircular display of the term AQUASTOP.

---

[7] The declaration was filed through the USPTO's TEAS electronic filing system, and therefore only the front side of the specimen was scanned.

18

Nor is there a genuine issue that respondent was using the mark in the form shown in the duckman specimen at that time.  The Office reviewed the submissions and accepted the declaration.  Thus, there is no genuine issue that respondent truthfully apprised the Office of the manner of use of its mark when it filed its declaration, and nothing was concealed or withheld from the Office.  Petitioner has not shown that there are any issues of material fact in dispute with respect to respondent's intent and as to whether respondent's activities constituted use of the registered mark.  Because the statements made by respondent in its combined declaration were truthful, *i.e.*, that it was using the mark as shown in the specimen submitted with the declaration, respondent's intent in making the statements is not material.  As for the adequacy of the specimen to demonstrate use of the registered mark, that does not go to the issue of fraud.  At most, it can go to the issue of abandonment, but as discussed above, because we find that the semicircular form is not a material alteration of the rectangular form, there has been no abandonment of the mark.  Accordingly, we find that there are no genuine issues of material fact with respect to the ground of fraud and that, as a matter of law, respondent did not commit fraud in maintaining its registration.

3) Respondent's motion for summary judgment as to petitioner's allegation that respondent has abandoned the subject mark by engaging in naked licensing thereof

Respondent argues that there has been no abandonment due to naked licensing.  According to respondent, as supported by the

declaration of its president,[8] respondent's branded goods are manufactured to its specifications by its vendors. The declaration states that respondent designs the goods, samples products from each vendor, controls distribution and pricing, and controls the use of the AQUA STOP mark on the goods, including supplying the hang tags and packaging in controlled numbers to its manufacturers. The declaration further explains that, while respondent's goods to Canadian customers may have been "dropped shipped" (directly shipped from the manufacturers), its goods to U.S. customers are warehoused and shipped by respondent.

In response, petitioner argues that respondent's motion is not accompanied by copies of its license agreements with foreign manufacturers or distributors, or by affidavits from such entities attesting to the terms of the licensing agreements and conditions of sale. Petitioner contends that genuine issues of material fact remain for trial with respect to the relationship respondent has with the third parties, whether respondent has written agreements with the third parties, and the degree to which respondent has exercised control over the quality of goods bearing the mark(s) and the manners and forms in which the mark is and has been displayed. Petitioner relies on the declaration of respondent's president submitted in a Canadian proceeding wherein she states that

---

[8] Petitioner's objection to the declaration of respondent's president on the bases that the credibility of the declarant has not been tested and the assertions made are self-serving in nature is overruled. Such declarations are permissible on summary judgment even though they are self-serving in nature and there is no opportunity for cross-examination of the declarant. *See* TBMP §528.05(b) (2d ed. rev. 2004).

respondent "contracts for the manufacture of footwear bearing the trademark AQUA STOP with various manufacturers in a number of countries" and that respondent "receives orders from its Canadian distributors … directs foreign manufacturers to distribute products directly to the said distributors in Canada" and the Canadian distributors "are invoiced directly by Sporto's manufacturers."

A trademark registration may be cancelled if the mark has become "abandoned." *See* Trademark Act §45, 15 U.S.C. §1127. A mark can become abandoned by any act or omission of the registrant which causes the mark to lose its significance as an indication of origin. Thus, uncontrolled and "naked" licensing can result in such a loss of significance of a trademark that a registration should be cancelled. *See* J. Thomas McCarthy, 3 <u>McCarthy on Trademarks and Unfair Competition</u> §18:48 (4th ed. 2007).

There exists no genuine issue of material fact that respondent contracts with foreign companies for the manufacture of its goods. On this point, the declaration of respondent's president submitted in support of its motion is consistent with the declaration submitted in the Canadian proceeding. In the present proceeding, respondent's president elaborated on the nature of the relationship between respondent and the foreign manufacturers. Based on the evidence of record, there is no genuine issue of material fact that respondent does not license its mark but, rather, contracts for manufacture of the goods under its mark. Nothing argued by petitioner raises a genuine issue of fact as to this. Thus, as a

matter of law, respondent has not abandoned its mark due to naked licensing.

Accordingly, no genuine issues of material fact exist as to any of petitioner's claims, and we find that respondent is entitled to judgment on each of these claims as a matter of law. Respondent's motion for summary judgment is granted and the petition to cancel is dismissed with prejudice.

In view of our finding herein that the mark which is the subject of respondent's request for amendment does not constitute a material alteration of the registered mark, the file will be forwarded to the Post Registration Division to grant respondent's pending request for amendment of the registration.

✧✧✧